United States Court of Appeals,

Fifth Circuit.

No. 95-31137.

In the Matter of ROYALE AIRLINES, INC., Debtor.

Nov. 4, 1996.

Appeal from the United States District Court for the Western District of Louisiana.

Before REYNALDO G. GARZA, DeMOSS and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

The Appellants, Gene Howard and Commercial National Bank appeal the judgment of the bankruptcy court granting Appellee, Fidelity and Deposit Company of Maryland's, motion for summary judgment as to its liability as surety for former trustee Jerry Bass. The Appellants contended that Bass failed to pursue preference actions before they prescribed causing financial loss to the Appellants. The bankruptcy court based its ruling on two grounds: first, that Commercial National Bank gained possession of the right to pursue preference claims, and second, based on the facts of the case, the doctrine of *in pari delicto* warranted a finding of no liability. The district court found that the doctrine of *in pari delicto* barred Commercial National Bank's recovery, and affirmed the bankruptcy court. Although we find that the bankruptcy court erroneously applied the doctrine of *in pari delicto,* given the particular egregious facts of this case, we affirm, finding that Commercial National Bank implicitly consented to Bass' actions as trustee.

*FACTUAL BACKGROUND*

Royale Airlines, Inc. ("Royale" or "Debtor") filed a voluntary petition for bankruptcy under Chapter 11 of the Bankruptcy Code on September 9, 1987. Royale named Commercial National Bank ("CNB") as its principal creditor, having a secured claim in excess of seven and a half million dollars. Immediately prior to and during the early stages of the Royale bankruptcy, CNB sought to improve its collateral position. On October 19, 1987, CNB obtained from the bankruptcy court a "Final Order" which provided that Royale's pre-petition and post-petition debt to CNB be secured

1

in favor of CNB by way of a super-priority lien.[1]  This order gave CNB a mortgage over all property that existed at the time of filing or that would exist in the future.  To reduce Royale's debt to CNB, after property was abandoned to Royale, Royale would then convey the property by *partial dation* to CNB.  CNB would then liquidate the property.

Royale continued to lose money in Chapter 11, and a plan of reorganization had not been confirmed by December 1988.  On December 23, 1988, the Airline Pilots Association International filed a motion to appoint a custodian for Royale or to have a trustee appointed.  Thereafter, on January 23, 1989, CNB filed a "Motion to Lift Stay under Section 362" and the bankruptcy court on January 30, 1989 signed an order granting CNB's motion.[2]  This Order gave CNB the right to take possession of all assets over which it had a mortgage.  Subsequently, the United States Trustee filed a motion requesting the bankruptcy court to appoint a trustee, or alternatively, to convert Royale's bankruptcy to a Chapter 7 case.  On February 28, 1989, the bankruptcy court entered an order converting the Royale bankruptcy to a Chapter 7 case.  In addition, Jerry Bass ("Bass") was appointed as interim trustee and became the permanent trustee on July 10, 1989.

During the Chapter 7 proceedings, CNB continued to collect and liquidate the property of the Royale estate.  On November 12, 1991, Jerry Bass resigned as trustee.  The United States Trustee

---

[1]The bankruptcy court's order provided that Royale's debt to CNB be secured in favor of CNB, by:

> all of the property of the estate of [Royale], including without limitation all property of the estate as it existed on the date [Royale] filed its petition, and all property of the estate acquired, created or generated in any manner whatsoever by the estate after the date [Royale] filed its petition....

[2]The January 30, 1989 order signed by the bankruptcy court states:

> IT IS ORDERED that the stay of 11 U.S.C. § 362 be modified to allow CNB to take possession and control of the property of the estate and the property of the Debtor which is the subject of [CNB's] mortgages and to secure, preserve, and protect same pending further order of this Court relating to the collateral....  CNB may exercise those rights in its discretion deemed necessary by it to secure, preserve, and protect the property of the estate and the property of the Debtor that serves as collateral for CNB's loans with powers similar to those granted a keeper under LSA-R.S. 9:5138.

served as trustee until Gene Howard ("Howard") was appointed as successor trustee on May 29, 1992. On March 22, 1993, the Royale bankruptcy was closed leaving an unpaid debt to CNB of over two million dollars. CNB brought this action hoping to recover damages from Bass and his surety, Fidelity and Deposit Company of Maryland, for Bass' alleged failure to timely institute preference actions.[3]

## *PROCEEDINGS BELOW*

In the adversary proceeding, CNB and Howard alleged that Bass, the former trustee, failed to pursue the bankruptcy estate's preference actions before they prescribed causing financial loss to CNB. There were two sureties guaranteeing Bass' performance as trustee, Travelers Indemnity Company and Fidelity and Deposit Company of Maryland ("Fidelity"). Both sureties were granted summary judgment in their favor by the bankruptcy court after the court found that CNB was mutually and equally at fault with Bass in allowing preference actions to prescribe without any action being taken. CNB appealed the bankruptcy court's grant of summary judgment for Fidelity and Deposit Company of Maryland.

The bankruptcy court also ruled that the preference actions of the Royale estate were never abandoned and that, although the law was unclear, CNB gained possession of the right to pursue Royale's preferential transfers and director and officer claims by virtue of the lift stay order dated January 30, 1989. The court found that the right to pursue the preference actions was possessed by CNB, not Bass. The bankruptcy court took judicial notice of the fact that CNB controlled the case and dominated the trustee's actions to such an extent that it had a duty to preserve these assets. CNB dominated the Royale estate from the commencement under Chapter 11 and thereafter following the conversion to Chapter 7. Therefore, the bankruptcy court found that CNB possessed a duty to prosecute these claims. The court also found that Bass shared a concurrent duty with CNB to pursue

---

[3]On October 28, 1993, Howard filed a motion to reopen the Royale bankruptcy in order to bring the current adversary proceeding. However, Howard had assigned all remaining causes of action to CNB in October 1992. CNB reassigned three percent (3%) of its alleged claim back to Howard in November 1993, thus allowing both CNB and Howard to pursue the adversary action together.

the preference actions.

The bankruptcy court reached the legal conclusion that any breach of the duty to investigate and pursue preference actions did not occur until the prescription date for filing preference claims or any other claim had passed. Based on this determination and the bankruptcy court's findings that CNB dominated Bass' actions to such an extent that if CNB wanted preference actions pursued it could have pes and that Bass was not removed as trustee but resigned, the court found that CNB breached its duty to preserve or pursue the preference actions in question. Consequently, the court held the equitable doctrine of *in pari delicto* barred CNB's claims. The bankruptcy court also implicitly found that Bass breached his duties owed to the estate.

The district court affirmed the bankruptcy court's denial of CNB's claims, although it disagreed with one of the reasons relied on by the bankruptcy court. In particular, the district court found that CNB was mutually at fault with Bass and that the doctrine of *in pari delicto* barred any recovery by CNB. The district court likewise found that CNB dominated the Royale estate from commencement of the case, as well as after the conversion to Chapter 7. However, the district court disagreed with the bankruptcy court's finding that the right to pursue the preference action had been transferred to CNB. The district court stated that it was not certain that the bankruptcy court had the power to transfer that right, but even if it did, the transfer had to be explicit and that neither the original 1987 financing order nor the January 30, 1989 lift stay order specifically transferred the right to bring preference actions to CNB. CNB timely filed its appeal.

*DISCUSSION*

Pursuant to the bankruptcy appellate process, the Court of Appeals is the second level of appellate review. Nonetheless, we review a bankruptcy court's grant of summary judgment *de novo*. *In re Southmark Corp.,* 88 F.3d 311, 314 (5th Cir.1996). Accordingly, all fact questions are viewed in the light most favorable to the nonmovant. Summary Judgment is proper when no issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Id.;* FED.R.CIV.P. 56(c).

The equitable defense of *in pari delicto,* which means "in equal fault", is based on the

common law notion that a plaintiff's recovery may be barred by his own wrongful conduct. *Bateman Eichler, Hill Richards, Inc. v. Berner,* 472 U.S. 299, 306, 105 S.Ct. 2622, 2626, 86 L.Ed.2d 215 (1985). The Supreme Court in *Bateman Eichler,* set forth a two part test applying this doctrine to bar private causes of action in securities cases. The *Bateman Eichler* test provides that an action "may be barred on the grounds of the plaintiff's own culpability only where (1) as a direct result of his actions, the plaintiff bears at least substantial responsibility for the violations he seeks to redress, and (2) preclusion of suit would not significantly interfere with the effective enforcement of the ... laws and protection of the ... public." *Bateman Eichler,* 472 U.S. at 310-11, 105 S.Ct. at 2629. The first prong of the test sets forth the essential elements of the doctrine, while the second prong embodies the doctrine's traditional requirement that public policy implications be carefully considered before the defense is allowed. *Pinter v. Dahl,* 486 U.S. 622, 633, 108 S.Ct. 2063, 2071, 100 L.Ed.2d 658 (1988). Courts have expanded the defense's application to those situations where the plaintiff bore at least substantially equal responsibility for his injury and where the plaintiff has participated in some of "the same sort of wrongdoi ng" as the defendants. *Id.* at 307, 105 S.Ct. 2627, *citing, Perma Life Mufflers, Inc. v. International Parts Corp.,* 392 U.S. 134, 138, 88 S.Ct. 1981, 1984, 20 L.Ed.2d 982 (1968).

Under the first prong of the *Bateman Eichler* test, a plaintiff cannot recover where, as a result of his own actions, the plaintiff bears at least substantially equal responsibility for the underlying wrongdoing of which he is complaining. Thus, in determining whether the bankruptcy court properly applied the doctrine of *in pari delicto,* we must first consider whether it was settled that CNB had a duty to bring the preference actions despite Bass' inactions. CNB argues that the bankruptcy court, as well as the district court, improperly found that CNB and Bass had equivalent duties to bring the preference actions and that both parties were equally at fault without providing a reasonable basis for any fault by CNB. Fidelity contends that the bankruptcy court correctly applied the doctrine after it found that CNB breached its duty to preserve or pursue the preference actions and thus it was equally at fault with Bass as trustee. We find CNB's argument persuasive.

5

The bankruptcy court in making its ruling noted that "it is unsettled law whether such a transfer [of the right to pursue preference actions] can take place...."[4] We need not resolve this question in order to decide the issue before us. The bankruptcy court further found that "in view of the fact that it is this court's opinion that [CNB] had possession of these claims ... it is also this court's opinion that [CNB] had a duty to prosecute these claims." However, it is clear that the bankruptcy court's January 30, 1989 Final Order did not specifically state that CNB had possession nor the duty to prosecute these claims. Because the law is admittedly unsettled on the ability to assign preference actions, and as noted by the district court, the bankruptcy court in its Final Order did not specifically transfer these actions to CNB, any determination that CNB had a concurrent legal duty to pursue those claims is at best speculative. Additionally, the bankruptcy court's ruling is insupportable to demonstrate the plaintiff bore substantially equal responsibility to pursue the avoidance actions. Therefore, there can be no finding of equivalent fault, a requisite element to support the defense of *in pari delicto*. Thus, the first prong of the *Bateman Eichler* test is not satisfied. Accordingly, we find the bankruptcy court erroneously applied the defense of *in pari delicto* predicated on the finding that CNB was equally at fault for not pursuing the preference actions when it was unknown whether CNB had a legal duty to act and, therefore, the bankruptcy court erred in granting summary judgment on such grounds.

However, our analysis does not end here. In reviewing the record, although we may conclude that the reasons given by the bankruptcy court do not support summary judgment, this court is not bound by those grounds articulated and we may affirm the judgment on any other grounds supported by the record. *See Forsyth v. Barr,* 19 F.3d 1527, 1534 n. 12 (5th Cir.), *cert. denied,* --- U.S. ----, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994). Therefore, we must proceed to Fidelity's

_____

[4]*See e.g., In re Pearson Industries, Inc.,* 178 B.R. 753, 762 (Bankr.C.D.Ill.1995) (stating that a trustee's right to recover preferences cannot be assigned to another entity), *In re North Atlantic Millwork Corp.,* 155 B.R. 271, 281 (Bankr.D.Mass.1993) (noting that absent the appointment of a creditor to bring preference actions in a reorganization plan, there is no statutory authority bestowing that right); *In re Professional Inv. Properties of America,* 955 F.2d 623, 626 (9th Cir.), *cert. denied,* 506 U.S. 818, 113 S.Ct. 63, 121 L.Ed.2d 31 (1992) (permitting assignment of a trustee's avoidance powers under particular circumstances outside reorganization plan).

6

argument that CNB consented to the actions or inactions of Bass thereby precluding CNB from recovery.

Fidelity argues that, under the doctrine of consent, CNB's failure to act to preserve the property of the Royale estate or to object to the actions taken or not taken by Bass as trustee, bars its recovery in this proceeding. CNB asserts that Fidelity's argument is improperly based on the assumption that CNB knew that Bass was not going to investigate the preference actions. CNB contends that it was led to believe that Bass was acting to pursue the preference actions.

It is well recognized that where a party is found to have by their conduct, either expressly or impliedly, consented to another party's actions, they are precluded from asserting a claim against that party for damages they may have suffered. In *In re Peckinpaugh,* 50 B.R. 865 (Bankr.N.D.Ohio 1985), the bankruptcy court reiterated that "a secured creditor cannot remain silent with knowledge of the Trustee's actions and not act upon it and then be heard that the Trustee made the wrong decision." *Peckinpaugh,* 50 B.R. at 869. This aptly describes the course of CNB's conduct in the case *sub judice.*

While the record discloses that CNB did not expressly consent to Bass' actions, the evidence before us mandates the finding that CNB implicitly consented to the actions of Bass. However, such consent should not be lightly inferred. In this case, CNB is a legally sophisticated creditor and exercised complete control over the trustee's actions throughout the bankruptcy. CNB was the largest creditor of the Debtor initially and throughout the case. The record discloses that CNB had a close involvement and was in close contact, if not daily contact, with virtually every aspect of the Debtor's bankruptcy proceedings. CNB worked with the trustee to liquidate the estate's assets. The bankruptcy court found that at a el discussed the preference matters; thus, CNB was aware of the preference claims and when those claims would prescribe, yet CNB's conduct shows that whatever course of action or inaction Bass pursued, CNB did not complain until the filing of this action. In addition, during the period of time that Bass served as trustee, the record is void of any documentation to either Bass, the bankruptcy court, or the United States Trustee's Office expressing

7

concern over Bass' performance as trustee. Nor did CNB seek to remove Bass as trustee. Accordingly, this Court finds that based on CNB's conduct during these proceedings, CNB implicitly consented to the actions or inactions of Bass in his duties as trustee of the Debtor. We find the remaining arguments of CNB to be without merit.

For the foregoing reasons, we AFFIRM the bankruptcy court's granting of summary judgment in favor of Fidelity and Deposit Company of Maryland.

AFFIRMED.