**In re 848 BRICKELL LIMITED, Debtor.**

**Principal Mutual Life Insurance Company, Appellant,**

v.

**Richard M. Langhorne, Appellee.**

**Richard M. Langhorne, Appellee/Cross–Appellant,**

v.

**Principal Mutual Life Insurance Company, Appellant/ Cross–Appellee.**

**Nos. 95–0456–CIV–NESBITT, 95–0458–CIV–NESBITT.**

United States District Court, S.D. Florida.

March 30, 1998.

Thomas Richard Julin, Steel Hector & Davis, Miami, FL, for Principal Mutual Life Insurance Company.

Arthur Halsey Rice, Rice & Robinson, Miami, FL, for Arthur Halsey Rice & Associates.

## ORDER AFFIRMING IN PART AND REVERSING IN PART BANKRUPTCY COURT'S MEMORANDUM DECISION INCORPORATING FINDINGS OF FACT AND CONCLUSIONS OF LAW, FINAL JUDGMENT, AMENDMENT TO MEMORANDUM DECISION, AMENDED FINAL JUDGMENT AND ORDER ON FEES

NESBITT, District Judge.

These consolidated appeals arise from the *Memorandum Decision Incorporating Findings of Fact and Conclusions of Law* dated September 27, 1994 and the *Final Judgment* of even date, the *Amendment to Memorandum Decision of September 27, 1994,* and the *Amended Final Judgment* dated December 20, 1994 entered in the United States Bankruptcy Court by Chief Bankruptcy Judge A. Jay Cristol in an adversary proceeding filed by Principal Mutual Life Insurance Co. ("Principal") against Richard Langhorne ("Langhorne" or "Trustee"), individually and as the Chapter 11 Trustee of the bankruptcy estate of 848 Brickell Limited ("Debtor"). The final judgment and amendment thereto (i) disallowed and subordinated the claims of Principal against the Debtor's estate, (ii) absolved Langhorne of liability for wrongdoing (but ordered him to individually pay the estate $12,000 in rent), (iii) awarded the bankruptcy estate compensatory and punitive damages against Principal for abuse of process and tortious interference, and (iv) awarded attorneys fees and costs to the Trustee and the Trustee's counsel. On January 14, 1995, the Bankruptcy Court also entered an order in the Debtor's main bankruptcy case confirming the Trustee's and his counsel's fee award, as provided in the *Amended Final Judgment,* and overruling Principal's objection to the award.

Principal appealed the foregoing final judgments and orders and Langhorne cross-appealed. On April 25, 1997, this Court heard Oral Argument on the merits of the appeals. Having considered the

parties briefs on appeal, the oral argument of counsel, the voluminous record on appeal, the decisions of the lower court (inclusive of the 127–page final judgment) and the applicable law, and being otherwise duly advised in the premises, the Court renders the following decision.

### FACTUAL AND PROCEDURAL BACKGROUND

In June 1983, Principal loaned the Debtor funds to acquire a 100,000 square foot commercial office building located at 848 Brickell Avenue in Miami (the "Building"). The loan was secured by a mortgage on the Building, the Debtor's sole business asset, and an assignment of rents from the Building. The Debtor defaulted on the loan in December 1990 and Principal demanded payment of the full amount due, approximately $9.5 million.

The Debtor did not pay on demand and Principal filed a foreclosure action in the Florida state court on June 24, 1991. The foreclosure action was contested and Principal sought the appointment of a receiver. However, just prior to the hearing to appoint a receiver, the Debtor filed for bankruptcy under Chapter 11 of the Bankruptcy Code. At the date of filing, Principal claims its debt exceeded $10 million.

Principal moved to dismiss the bankruptcy case for bad faith filing, but the court denied the request. Instead, the court granted Principal relief from the automatic stay to, among other things, conclude the receivership hearing and proceed with the foreclosure case through judgment. On December 24, 1991, the state court granted Principal's receiver motion and appointed Langhorne, a real estate broker and property manager, as receiver.

In January 1992, Langhorne was appointed as the Chapter 11 Trustee in the bankruptcy case. He formed his own company, known as The Langhorne Company, and physically moved himself and his company into the Building and began making improvements and managing the Building. During the Trustee's management, on August 24, 1992, Hurricane Andrew hit Miami and the Building sustained major damage.

The damage was insured, but the Trustee had difficulty making the repairs because he was not authorized to use any cash generated by the Debtor. The cash generated by the Debtor constituted Principal's cash collateral, as did the insurance proceeds, and pursuant to 11 U.S.C. § 363,[1] the Trustee was prohibited from spending any of the cash [in which Principal had an interest] without Principal's consent. Thus, until the parties reached an agreement, Principal would authorize payment of certain expenditures only as required.

On October 10, 1992, the Trustee and Principal finally entered into a cash collateral stipulation. The cash collateral stipulation provided Principal with a first priority lien on all rents received from the Building since the filing of the bankruptcy petition and an administrative claim for monies that Principal advanced during the bankruptcy for taxes and tenant improvements.

In November 1992, Stortford Brickell Inc. ("Stortford") offered to purchase the Debtor's Building for $7,503,000. Stortford's offer was conditioned upon receiving a credit against the sales price for any tenant improvement obligations which remained unpaid at the time of sale. Principal would not, however, consent to the sale to Stortford on the terms offered because the Debtor's estate had a tenant improvement obligation which remained unpaid in the approximate amount of $325,400[2]; and,

---

1. Pursuant to 11 U.S.C. § 363(c)(2), the Trustee may not use, sell or lease cash collateral unless each party who has an interest in the cash collateral consents, or the court, after

notice and hearing, authorizes the use of such cash collateral.

2. Although the amount of $325,400 remained unpaid, the tenant who was owed for the

after deduction for the tenant improvement, Principal would not realize the $7.25 million minimum bid it agreed to accept to release its lien.

Notwithstanding Principal's position, the Trustee soon thereafter filed a motion to approve the sale to Stortford. Principal, the Trustee and Stortford eventually entered into an agreement for the sale of the Building and the bankruptcy court approved the sale. The court entered an order (the "Sale Order") determining Principal's secured claim to be $7,503,000, equal to the gross purchase price; and, it further provided that Principal's lien would attach to the sale proceeds. The Sale Order also directed the Trustee to retain a certain specified amount from the sale proceeds to be used to pay such identified expenses as the real estate broker's commission and the Trustee's fee. Under the Sale Order, after deduction for specified expenses, Principal was to receive a minimum from the sale proceeds of $6,597,610. Principal would also receive any excess funds remaining from the reserved amounts, after deduction for expenses.

Principal thereafter agreed to reduce Stortford's offer by $212,258 for insured but unrepaired hurricane damage, rents and tenant deposits in the Trustee's possession. (Principal claims it agreed to credit Stortford for the insurance money, rents and deposits upon the Trustee's representation that those monies would be immediately turned over to Principal upon court approval.) In total, Principal received $6,352,972.43 from the sale proceeds, which is $244,636.57 less than the minimum amount Principal was to receive pursuant to the Sale Order.

The remaining sums were not, however, turned over to Principal and in July 1993, Principal filed an adversary case. Principal sought a declaration that the insurance proceeds, tenant security deposits and rents totaling about $475,000 were encumbered by Principal's lien and should be delivered to Principal. Principal's complaint also requested an administrative claim for tenant improvements and expenditures in the amount of $1,293,048.45 to be paid by the Trustee from all cash not considered to be Principal's cash collateral, and further sought damages against the Trustee, individually and as Trustee, for improper disbursement of Principal's cash collateral, negligent or willful breaches of fiduciary duties and for fraudulent misrepresentations. The Trustee counterclaimed, arguing Principal retained no interest in the insurance money, rents or deposits and was not entitled to any administrative claim. The Trustee also sought to surcharge Principal's collateral for fees and subordinate all Principal's claims to the payment of the Trustee's and his counsel's fees, as well as seeking compensatory and punitive damages on behalf of the estate for Principal's abuse of process and tortious interference.

Embodied in the *Memorandum Decision Incorporating Findings of Fact and Conclusion of Law* and the *Final Judgment*, the *Amendment to Memorandum Decision of September 27, 1994,* and the *Amended Final Judgment* are the bankruptcy court's findings and conclusions on the issues raised. The court determined Principal did not have a lien on the insurance proceeds, rents or deposits [and was not therefore entitled to recover the $475,000 in the Trustee's Cash Account] because the Building appreciated in value without application of those proceeds. Also, the court held that Principal's administrative claim for the $1.2 million expended in tenant improvements would be subordinated to payment in full of the Trustee's fees.

The court's judgments and orders further dismissed Principal's claims against the Trustee for the alleged breach of his

tenant improvements agreed the debt could be paid in 120 equal monthly payments by a

reduction in their rent.

fiduciary duties and for fraud or misrepresentation, but found the Trustee owing to the estate the sum of $12,000 which represented the Trustee's use of the Building for his offices. The bankruptcy court also dismissed the Trustee's claims for Principal's alleged breach of the Sale Order and for surcharge, but found Principal owing to the estate actual and punitive damages for abuse of process, as well as nominal and punitive damages for Principal's tortious interference with the sale contract.

## STANDARD OF REVIEW

The Court has jurisdiction of this appeal pursuant to 28 U.S.C. § 158(a). In accordance with Federal Rule of Bankruptcy Procedure 8013, the bankruptcy court's findings of fact will not be set aside unless clearly erroneous. *In re Chase & Sanborn Corp.*, 904 F.2d 588 (11th Cir.1990); *In re T & B General Contracting, Inc.*, 833 F.2d 1455 (11th Cir.1987). Equitable determinations by the bankruptcy court are subject to review under an abuse of discretion standard. *In re Red Carpet Corp. of Panama City Beach*, 902 F.2d 833 (11th Cir. 1990). Conclusions of law are subject to *de novo* review. *In re Chase & Sanborn Corp.*, 904 F.2d at 593; *In re Sublett*, 895 F.2d 1381 (11th Cir.1990). The Court will address the issues on appeal in accordance with these standards of review.

## DISCUSSION

### I. *Principal's Claims and Causes of Action*

Principal asserts the judgment against it is not supported by the findings contained in the memorandum opinion or record, generally.

### A. Extinguishment of Principal's security interest.

The bankruptcy court extinguished Principal's lien on the insurance, rents and security deposits (collectively referred to as the "Cash Accounts"), holding that the Sale Order limited Principal's secured claim to the proceeds derived from the sale

to Stortford. The bankruptcy court determined that the value of the Building increased substantially since the petition date, and Principal is therefore not entitled to any liens on the Cash Accounts as "adequate protection". The court concluded Principal's secured claim would be limited to the value of the Building as of the petition date, and the claim would be satisfied by payment to Principal of the sale proceeds.

▬▬▬ Principal argues that its security interests in the Cash Accounts should not have been extinguished as a matter of law. The Court has reviewed the record with respect to this issue *de novo* and agrees that Principal's security interests in the Cash Accounts should not have been extinguished. Principal was granted liens on the Cash Accounts as adequate protection of its secured interest. In a Chapter 11 reorganization, the "adequate protection doctrine" protects a secured creditor from the diminution in value of its collateral after the petition filing date, during the course of the administration of the bankruptcy case. The doctrine does not limit the secured creditor's protection to the value of the collateral as of the petition date because the bankruptcy case may be ongoing for months or years until the Debtor or other interested party seeks confirmation of a plan, and the doctrine protects the value of the secured creditor's collateral during that time.

In *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), the Supreme Court held that an undersecured creditor is entitled to recover **all** of its collateral, or the proceeds thereof, and the creditor's lien cannot be disencumbered by judicial valuation of the collateral as of the petition date. Therefore, because the Cash Accounts were subject to Principal's lien prior to the sale of the Building and were used as credits against the sale price, the Cash Accounts should be regarded as part of the sale proceeds, in which Principal is secured. At the very least, the Cash

Accounts remained encumbered assets by Principal's lien and were not otherwise disposed of by the Sale Order.

The bankruptcy court erred when it extinguished Principal's lien against the Cash Accounts. The equities of this case justify enforcing a lien as (i) Principal agreed to pay the unsecured creditors in full from its collateral and (ii) the Cash Accounts were expressly used under the terms of the sale contract as a credit against the sales price because the repairs had not been completed. The Cash Accounts became the equivalent of sales proceeds to which the Sale Order expressly extended Principal's lien—to the extent necessary for Principal to realize the $6,597,610 minimum bid is agreed to accept under the Sale Order. Although the court found a letter between the parties evidenced Principal's agreement to accept less than it stated it would for the sale price of the Building, the letter does not support extinguishing Principal's lien. The court's conclusion that supports extinguishing Principal's lien is in error and the equities in this case require recognition of Principal's lien against the Cash Accounts.

## B. Principal's administrative claim.

The bankruptcy court denied Principal's administrative claim for approximately $1.2 million [which Principal advanced to pay necessary expenses during the bankruptcy case] on the basis that the increased value of the Building, and resulting sale price, compensated Principal for its expenditures. However, Principal asserts it has not been adequately compensated for the expenditures and is entitled to an administrative claim pursuant to the cash collateral order. The Court reviews this issue *de novo*.

■ The bankruptcy court's denial of Principal's administrative claim is inconsistent with the provisions of the approved cash collateral stipulation which grants an administrative claim to Principal for its post-petition funding of the estate expenses. It was Principal's payment of certain property taxes and other expenses which benefitted the estate and enabled the unsecured and priority creditors to ultimately receive payment of their claims in full. The estate having therefore received the benefit of the cash collateral under the stipulation, it is only equitable to afford Principal its bargained—for administrative claim, and the bankruptcy court abused its discretion by not allowing the claim.

■ Having determined Principal is entitled to its administrative claim, the Court must now determine, as a matter of law, whether Principal's conduct of record supports subordination of its administrative claim to the Trustee and his counsel's administrative claims [for fees and costs]. From a review of the record, this Court does not find the bankruptcy court committed error in subordinating Principal's claim. Although Principal states the Trustee did not prove "egregious" conduct such as fraud, spoilation or overreaching to justify such a subordination, this Court concludes otherwise. The first 77 pages of the bankruptcy court's memorandum opinion recite sufficient facts to establish the egregious conduct warranting subordination of Principal's claims, and those facts are not clearly erroneous. Although the pursuit of one's legal rights may not be grounds for equitable subordination, the lower court's findings that Principal's protracted and abusive litigation tactics harmed the estate by causing it to incur' about $400,000 in fees justifies subordination. *In re Psychiatric Hospitals of Hernando, Inc.,* 207 B.R. 276 (Bankr.M.D.Fla. 1997) (use of powers by an insider for personal gains or advantage to the detriment of creditors or the estate constitute a wrong equity would undo).

## C. Claims against Trustee for breach of fiduciary duties.

■ Principal contends the bankruptcy court erred, as a matter of law, by dismissing its claims against the Trustee for al-

leged breach of fiduciary duties. However-er, a review of the record leads this Court to conclude that Principal's claims were properly dismissed as the record lacks sufficient evidence to establish a breach of any fiduciary duty. Although the lower court found the Trustee, individually, liable for rent for the offices his company occupied in the Building, the court did not find the Trustee attempted "rent-free exploitation" of estate property. Simply because the Trustee may have exercised "better" judgment, by not moving his offices into the Building, does not rise to the level of a breach of fiduciary duty.

Moreover, Principal's argument that the Trustee breached his fiduciary duties by making payments from Principal's cash collateral of real estate commissions and construction supervision fees, without Principal's authorization, is without merit. Although 11 U.S.C. § 363 prohibits the use of cash collateral without the secured creditor's consent, the lower court found that the payments made by the Trustee were for reasonable and necessary expenses that benefitted the estate and, as such, were authorized to be paid by Principal pursuant to the cash collateral order and Sale Order. *See Howard v. Fidelity and Deposit Co. of Maryland (In re Royale Airlines, Inc.)*, 98 F.3d 852 (5th Cir.1996) (party expressly or impliedly consenting to another party's actions is precluded from asserting a claim against that party for damages they may have suffered). The record is replete with findings that the Trustee acted within the parameters of the Sale Order and cash collateral order and, by so doing, improved the value of the Building through efficient management, timely filed a plan as required by the Bankruptcy Code, appropriately disposed of estate property through sale and provided full payment for unsecured and priority creditors. These facts support a finding

that the Trustee did not breach any duties to the estate. *In re Peckinpaugh*, 50 B.R. 865, 869 (Bankr.N.D.Ohio 1985) ("secured creditor cannot remain silent with knowledge of the Trustee's actions and not act upon it and then be heard that the Trustee made the wrong decision"). The bankruptcy court's findings are not clearly erroneous and therefore support dismissal of Principal's claims against the Trustee for breach of fiduciary duties.

### D. Claims against Trustee for fraud.

Principal argues that, if its lien on the Cash Accounts was properly extinguished, the Trustee should be liable for fraud because he induced Principal to consent to giving Stortford credits by promising the credits would not reduce the total cash that Principal would receive in the transaction. In other words, Principal states that if the court was correct to extinguish the liens, then the court should not have dismissed the fraud claim. However, this Court having found herein that the lower court did improperly extinguished Principal's lien on the Cash Accounts, this issue is moot.[3]

### II. *Trustee's Claims and Causes of Action.*

#### A. Claims against Principal for abuse of process.

Principal asserts the judgment for actual and punitive damages entered against it for abuse of process is also erroneous, as a matter of law, because the actions the lower court found Principal to have committed are not an abuse of process. To prove abuse of process, the Trustee must demonstrate (i) Principal made an illegal, improper or perverted use of the process which was not warranted or authorized, (ii) that Principal had an ulteri-

---

**3.** Notwithstanding the fact Principal conditioned its appeal of this issue on whether extinguishing its lien was proper and is now consequently moot, the Court feels constrained to comment on the fact that the rec-

ord is devoid of the necessary proof to establish fraud as Principal was unable to show it "reasonably relied" on the Trustee who Principal itself sought to remove.

or motive for exercising such illegal or improper use of process, and (iii) that damages were incurred because of the irregularity. The bankruptcy court agreed that the filing of a complaint is not *per se* an abuse of process. However, the orders of the lower court elaborate on Principal's actions following process and support the court's finding of misconduct. Principal did not just aggressively litigate its claims; it obstructed and interfered with the sale transaction by offering Stortford $10,000 to forego closing on the Building, it instituted action to determine its secured claim even though the Sale Order established the claim, and it generally objected to all fees sought by the professionals, yet opposed dismissal of the case. Additionally, Principal's claims for fraud and breach of fiduciary duties, alleging the Trustee was using the estate for his own personal gain, were not well-founded. Principal's antagonism and non-cooperation support the court's finding of abuse of process.

However, the bankruptcy court abused its discretion in awarding punitive damages in the amount of $500,000 which exceeds three times the compensatory amount. The Trustee contends state law statutes on damages for abuse of process are merely guides to the amount the federal court can award and are alternately sustainable under the broad discretionary powers of 11 U.S.C. § 105. This Court disagrees.

■■■ The punitive damage award on this claim is justified by the record which supports a finding that the primary motivation of Principal in suing the Trustee was to gain leverage and control over the assets of the estate for its own benefit, to the detriment of the estate. This evidence demonstrates Principal's conduct was malicious and supports a punitive damage award. However, under Florida law, punitive damages in a civil action for misconduct in commercial transactions is limited to treble damages. Principal contends that the amount awarded by the bankruptcy court is, therefore, excessive. The Court agrees; on the $76,000 amount awarded to the estate for the abuse of process claim, the $500,000 punitive damage award is 6 1/2 times the actual damages and is excessive. *BMW of N. America, Inc. v. Gore,* 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996).

■■■ Contrary to the Trustee's position, the punitive damage award cannot be sustained under the catch-all provisions of 11 U.S.C. § 105. The lower court did not award punitive damages under section 105, and section 105 is not intended to provide an independent ground for relief where it is not otherwise proven it is "necessary and appropriate" to carry out the provisions of the Bankruptcy Code.[4] The record does not support the Trustee's argument that the award of punitive damages was "necessary and appropriate" to carry out any provisions of the Bankruptcy Code. *See generally In re Jove Engineering, Inc. v. I.R.S.,* 92 F.3d 1539 (11th Cir.1996) (affirming monetary sanctions under section 105 for violation of the automatic stay); *In re Hardy,* 97 F.3d 1384 (11th Cir.1996) (court may only impose sanctions for contempt that are coercive and not punitive).

### B. Claims against Principal for tortious interference.

■■■ The record further supports the bankruptcy court's finding that Principal disrupted the sale negotiations, causing delay and increasing fees and costs. The court awarded $1 nominal damages and $250,000 punitive damages against Principal and in favor of the estate for tortious interference with the sale contract. Principal asserts, as a matter of law, the actions that Principal was found to have committed are not tortious interference. The bankruptcy court found (i) Principal's increase in the minimum bid it would ac-

---

4. As counsel stated at the oral argument, section 105 of the Bankruptcy Code is aptly referred to this way: "It's the Pope provision, but the Pope can't change the Ten Commandments." Transcript of Oral Argument, April 25, 1998, page 70, line 6–7.

cept from the sale was intended to interfere with and disrupt the Stortford offer, (ii) Principal's communication with potential purchasers was improper, and most notably, (iii) Principal's undisputed $10,000 offer to Stortford was a bribe for Stortford to walk away from the sale, even though Stortford did not, in fact, walk away. Neither the findings nor the conclusions upon which the tortious interference judgment is based are erroneous.

■ Moreover, the findings and conclusions of the bankruptcy court on this issue warrant the finding that Principal's conduct was malicious and justified the award of punitive damages. However, the award of punitive damages on this claim is excessive and, instead, should bear some relation to the amounts awarded on the claim. *BMW of N. America v. Gore,* 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809. Accordingly, this cause will be remanded to the bankruptcy court for further determination.

### III. *Compensation to the Trustee and his counsel.*

■ Principal claims the court grossly miscalculated the amount due the Trustee for his fee by relying on the "unsworn representations of Langhorne's counsel regarding amounts that were irrelevant to the calculation." Because the Trustee's fee is calculated on a percentage basis of the amount of money the Trustee disburses from the estate, and because Principal questioned the amount disbursed, the lower court should have conducted an evidentiary hearing to ascertain the exact amount of money disbursed from the bankruptcy estate. Though the fee application disclosed amounts "to be" disbursed, the Trustee had not yet disbursed all funds and, as of the date of the order awarding fees, the Trustee was not therefore entitled to a percentage of the amounts "to be" disbursed. Thus, the court's award of fees to the Trustee will be remanded for an evidentiary hearing to determine (i) the exact amount of funds the Trustee dis-

bursed and (ii) the percentage to which he is entitled pursuant to the Bankruptcy Code.

### IV. *Dismissal of claims for surcharge and breach of Sale Order.*

The Trustee takes the position that, should the award for abuse of process not be affirmed on appeal, and no money is awarded the estate against Principal, then Trustee and the professionals will need to seek compensation through a sanction to satisfy its fees. The Trustee asserts such a sanction is appropriate against Principal for its breach of the Sale Order and dismissal of the Trustee's claims would therefore be erroneous. However, the Court having affirmed the damage to the estate for Principal's abuse of process, this issue is moot.

### *CONCLUSION*

The Court has not found any factual errors at the core of this appeal. However, the Court concludes that from the evidence presented, the bankruptcy court arrived at certain legal conclusions in error.

In accordance with the foregoing, the *Memorandum Decision Incorporating Findings of Fact and Conclusions of Law* dated September 27, 1994 and the *Final Judgment* of even date, the *Amendment to Memorandum Decision of September 27, 1994,* and the *Amended Final Judgment* dated December 20, 1994 are AFFIRMED, in part, and REVERSED, in part, as follows:

1. The judgments for abuse of process in the amount of $76,111 and tortious interference in the nominal amount of $1 are AFFIRMED, but the awards of punitive damages on both claims, in the respective amounts of $500,000 and $250,000, are VACATED and REMANDED to the bankruptcy court for calculation of the amount of punitive damages due, consistent with this opinion.

2. The judgments dismissing the Trustee's claims for breach of Sale Order and for surcharge are AFFIRMED.

3. The judgments extinguishing Principal's secured lien on insurance proceeds, rents and deposits (the "Cash Accounts") and denying Principal's administrative claim in the amount of $1,293,048.45 are REVERSED and the bankruptcy court is directed to enter judgment consistent with this opinion, reinstating a lien in favor of Principal on the Cash Accounts to the extent of the $244,636.57 deficiency from the $6,597,610 minimum sale proceeds Principal was to receive from the Stortford transaction and reinstating Principal's administrative claim.

4. The judgments subordinating Principal's administrative claim are AFFIRMED.

5. The order awarding compensation to the Trustee is REMANDED for calculation upon consideration of all relevant and material evidence, consistent with this opinion.